1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   EMMANUEL ZARCO,                          Case No. 20-cv-00089-HSG

8              Plaintiff,                     **ORDER GRANTING DEFENDANTS'**
                                              **MOTION FOR SUMMARY**
9        v.                                   **JUDGMENT**

10  VWR INTERNATIONAL, LLC, et al.,           Re: Dkt. No. 39

11             Defendants.

12

13        Plaintiff Emmanuel Zarco brings this suit against VWR International, LLC ("VWR"),

14  Avantor, Inc., and Avantor Performance Materials, Inc. (together, "Defendants") alleging

15  violations of the California Fair Employment and Housing Act ("FEHA"), the California Family

16  Rights Act ("CFRA"), and public policy.  Dkt. No. 1, Ex. 1 ("Compl.") ¶¶ 21–56.  Pending before

17  the Court is Defendants' motion for summary judgment.  *See* Dkt. No. 39 ("Mot."), 48 ("Opp."),

18  49 ("Reply").  For the reasons explained below, the Court **GRANTS** Defendants' motion.

19  **I.    BACKGROUND**

20        Plaintiff Emmanuel Zarco began working for VWR as a chemical tracking coordinator in

21  March 2016.  Dkt. No. 48-1, Declaration of Jason M. Erlich ("Erlich Decl."), Ex. 2.  VWR is "a

22  global scientific laboratory supply and distribution company."  Dkt. No. 41, Declaration of

23  Andrew Koo ("Koo Decl.") ¶ 2.  In 2018 Plaintiff worked as one of two VWR employees working

24  on site at the facilities of BioMarin Pharmaceutical, Inc. ("BioMarin"), a VWR customer.  *Id.* ¶¶ 2,

25  6.  Plaintiff's duties included "handling and delivering hazardous chemicals throughout the

26  BioMarin facility, [performing] physical inventory management, operating basic warehouse

27  equipment, and conducting safety and equipment inspections through the campus."  *Id.* ¶ 6; *see*

28  *also* Dkt. No. 42, Declaration of Adam Friedenberg ("Friedenberg Decl."), Ex. A ("Zarco Dep.")

United States District Court
Northern District of California

United States District Court
Northern District of California

1    at 18:7-33:8.

2          Plaintiff was diagnosed with congestive heart failure in 2002.  Zarco Dep. at 43:1-5.

3    Around February or March 2018, Plaintiff told his supervisor, Andrew Koo, that he need to have

4    surgery in March "to have a device implanted to assist his heart's ability to pump blood, and that

5    he would ultimately need a heart transplant."  Koo Decl. ¶ 7.  In a report dated March 13, 2018,

6    Plaintiff's cardiologist, Hemal Parekh, MD, stated that Plaintiff was not "able to perform work of

7    any kind" from March 12, 2018 until October 1, 2018.  Dkt. No. 40, Declaration of Alyson

8    Contrisciano ("Contrisciano Decl."), Ex. A at 57–58.  Plaintiff applied for a leave of absence

9    under the Family Medical Leave Act ("FMLA"), and VWR granted Plaintiff a 12-week unpaid

10   leave.  Contrisciano Decl. ¶ 4.  VWR covered Plaintiff's position with temporary workers at a

11   higher cost.  Koo Decl. ¶ 8.

12         Plaintiff's FMLA leave ended by mid-2018 and Plaintiff had no available paid sick leave

13   or vacation time.  Contrisciano Decl. ¶ 5.  Plaintiff requested continued unpaid leave in June.  *Id.*

14   In a report dated June 6, 2018, Dr. Parekh provided an update detailing that Plaintiff "cannot do

15   any work that requires more than a half-hour of sitting, standing, [or] walking," that Plaintiff was

16   "unable to work in any capacity," and that no workplace adjustment could be made to allow

17   Plaintiff "to return to work and consistently perform the job duties."  *Id.*, Ex. B at 187–88.  Dr.

18   Parekh also noted that Plaintiff's restrictions would be permanent "unless he gets a heart-kidney

19   transplant and then recovers from that surgery," and that Plaintiff's condition would continue "for

20   at least 6 months to a year with transplant and it could take at least 6 months to get a transplant."

21   *Id.*  Though Mr. Koo had told human resources that it was not feasible to use temporary

22   replacements indefinitely, VWR approved ADA leave through October 1, 2018.  Contrisciano

23   Decl. ¶ 5.

24         On October 4, 2018, Plaintiff met with Mr. Koo.  Koo Decl. ¶ 9.  According to Mr. Koo,

25   Plaintiff told him that he "was still unable to lift or move anything, and that his medical

26   restrictions had not changed," but Plaintiff was "feeling like he might be able to work part time at

27   a fully deskbound job."  *Id.*; *see also* Erlich Decl., Ex. 10 at VWR00558 (October 2018 email

28   from Mr. Koo informing HR that Mr. Zarco had told Mr. Koo that he could not lift or move

anything, and noting that Mr. Koo did not presently have a position that could fit with Mr. Zarco's medical restrictions).[1]   Plaintiff attests that he told Mr. Koo that he could "[d]o a few minutes of sitting, few minutes of walking," but Plaintiff also acknowledges that his doctor had not cleared him to perform any aspect of his old job at the time of that discussion with Mr. Koo.  Zarco Dep. at 74:6-12, 75:22-76:3.  Mr. Koo told Plaintiff to follow up with human resources about next steps.  Koo Decl. ¶ 9.  In an email informing human resources about his meeting with Plaintiff, Mr. Koo said "honestly, he is a great worker but at this point there is no way we can have him on the team until we either have a position that [] satisf[ies] his medical restriction[s] or he gets better . . . I have told him to contact" human resources and UNUM, VWR's disability plan administrator.  Erlich Decl., Ex. 10 at VWR00558.  According to Alyson Contrisciano, one of VWR's human resources employees, both human resources and UNUM tried to follow up with Plaintiff and his doctor in October 2018.  Contrisciano Decl. ¶ 6, Ex. C.

Ms. Contrisciano emailed Plaintiff stating that his leave was last approved through October 1, 2018 and that VWR was "waiting on updated documentation to be able to approve your leave through a new date."  *Id.*, Ex. D at VWR00257.  On October 18, 2018, Plaintiff responded indicating that he was "in the process of getting" the medical forms to UNUM, but "[f]or the meantime" attached a doctor's note dated October 17, 2018 stating he would "be out until Feb 2019."  *Id.*  The doctor's note, signed by Wing Kay Pui, PA-C, stated that Plaintiff "is placed off work from 10/1/2018 through 2/1/2019."  *Id.* at VWR00258.  Soon after, UNUM sent Ms. Contrisciano a further report from Dr. Parekh.  *Id.*, Ex. E.  In that report dated October 19, 2018, Dr. Parekh stated that Plaintiff "is on the heart transplant waiting list" and that he expected Plaintiff to return to work, likely with restrictions, within "6 months – 1 year after [the] heart transplant."  *Id.* at VWR00384.  Dr. Parekh's report described Plaintiff's restrictions as "no heavy lifting or vigorous exertion," and no "prolonged periods" of sitting or standing "due to shortness of breath and fatigue."  *Id.*  He further indicated that workplace assistance adjustments to help

---

[1] Plaintiff attests that he does not "remember word for word," but he "think[s] that" the characterization that Plaintiff told Koo his restrictions had not changed or that he could not lift or move anything "may be accurate."  Zarco Dep. at 76:4-15.

3

1    Plaintiff return to work were not applicable.  *Id.*

2           In response to the update, Ms. Contrisciano told UNUM that "we are no longer able to

3    hold his position with no return date expected."  Erlich Decl., Ex. 13 at VWR00127.  According to

4    VWR, it was no longer "feasible" to cover Plaintiff's position with temporary workers.  Koo Decl.

5    ¶ 10.  On November 5, 2018, Ms. Contrisciano emailed Plaintiff stating that VWR received the

6    "latest doctor's note" indicating that Plaintiff would "be out 6-12 months following surgery that is

7    not yet scheduled."  Contrisciano Decl. ¶ 7, Ex. F at VWR00161.  She informed Plaintiff that

8    VWR could not accommodate his requested leave and that it would "process a termination of

9    employment effective" November 5, 2018.  *Id.*  She further advised Plaintiff that he should

10   reapply for a position "when [he] was able."  *Id.*

11          In January 2019, Plaintiff had a successful heart transplant.  Dkt. No. 48-1 at 53:14-17.

12   Plaintiff felt well enough to work by July 2019.  Zarco Dep. at 125:11-13.  Plaintiff began to apply

13   to jobs by October 2019.  *Id.* at 123:23-124:7.  Plaintiff received one offer that he rejected because

14   the position involved driving to different sites.  *Id.* at 126:1-6; 127:1-8.  On May 7, 2020, Plaintiff

15   was "placed off work from 3/1/2020 through 9/1/2020."  Friedenberg Decl., Ex. B.  In October

16   2020, VWR offered Plaintiff an "inventory coordinator" position.  Koo Decl. ¶ 11.  Plaintiff told

17   Mr. Koo that his termination had a significant "affect [sic] on me" and noted that he was unsure

18   whether his "trust in the company" could be "regained at this time."  Koo Decl. ¶ 11, Ex. A.

19   Plaintiff ultimately declined the offer.  *Id.*  Plaintiff began working as a caregiver for an elderly

20   individual in January 2021.  Dkt. No. 48-2 ("Zarco Decl.") ¶ 3.

21   **II.    LEGAL STANDARD**

22          Summary judgment is proper when a "movant shows that there is no genuine dispute as to

23   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

24   A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*

25   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the

26   record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The

27   Court views the inferences reasonably drawn from the materials in the record in the light most

28   favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

United States District Court
Northern District of California

4

1   574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"

2   *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*

3   *Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

4          The moving party bears both the ultimate burden of persuasion and the initial burden of

5   producing those portions of the pleadings, discovery, and affidavits that show the absence of a

6   genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the

7   moving party will not bear the burden of proof on an issue at trial, it "must either produce

8   evidence negating an essential element of the nonmoving party's claim or defense or show that the

9   nonmoving party does not have enough evidence of an essential element to carry its ultimate

10  burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

11  (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must

12  also show that no reasonable trier of fact could not find in its favor.  *Celotex Corp.*, 477 U.S. at

13  325.  In either case, the movant "may not require the nonmoving party to produce evidence

14  supporting its claim or defense simply by saying that the nonmoving party has no such evidence."

15  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105.  "If a moving party fails to carry its initial

16  burden of production, the nonmoving party has no obligation to produce anything, even if the

17  nonmoving party would have the ultimate burden of persuasion at trial."  *Id.* at 1102–03.

18         "If, however, a moving party carries its burden of production, the nonmoving party must

19  produce evidence to support its claim or defense."  *Id.* at 1103. In doing so, the nonmoving party

20  "must do more than simply show that there is some metaphysical doubt as to the material facts."

21  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with

22  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91

23  F.3d 1275, 1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its

24  claim or defense, courts enter summary judgment in favor of the movant.  *Celotex Corp.*, 477 U.S.

25  at 323.

26  **III.   DISCUSSION**

27         Plaintiff brings the following causes of action  (1) disability discrimination; (2) failure to

28  accommodate; (3) failure to engage in interactive process; (4) retaliation; (5) failure to prevent

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    discrimination or retaliation; (6) discrimination and retaliation under CFRA; and (7) wrongful

2    termination.  Compl. ¶¶ 21–56.  Defendants contend that Plaintiff cannot establish a triable issue

3    of fact as to any of his claims.  Defendants also challenge Plaintiff's entitlement to punitive

4    damages.

5         **A.    FEHA claims**

6              **i.    Disability Discrimination**

7              Section 12940(a) of FEHA prohibits an employer from discharging an employee because

8    of that employee's physical disability.  "An employer may, however, lawfully discharge an

9    employee who 'is unable to perform his or her essential duties . . . even with reasonable

10   accommodations.' "  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1241 (9th Cir. 2013)

11   (quoting Cal. Gov't Code § 12940(a)(1)).  To establish a prima facie case of disability

12   discrimination, Plaintiff must show that he "(1) suffered from a disability, or was regarded as

13   suffering from a disability; (2) could perform the essential duties of the job with or without

14   reasonable accommodations, and (3) was subjected to an adverse employment action because of

15   the disability or perceived disability."  *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310,

16   (Ct. App. 2010).

17             When analyzing disparate treatment claims under FEHA, California courts use the three-

18   stage burden shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

19   *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (Cal. 2000).  Under that framework, the plaintiff

20   must first establish a prima facie case of discrimination; the burden then shifts to the employer to

21   show a "legitimate, nondiscriminatory reason" for the adverse employment action; and finally the

22   burden shifts back to the plaintiff to prove that the employer's asserted reasons for the action are

23   pretextual.  *Hanson v. Lucky Stores Inc.*, 74 Cal. App. 4th 215, 224 (Ct. App. 1999).  But the

24   burden is reversed when an employer moves for summary judgment.  *Lawler*, 704 F.3d at 1242.

25             Accordingly, Defendants bear the initial burden of showing either that Plaintiff cannot

26   establish one of the elements of the FEHA claim, or that "there was a legitimate,

27   nondiscriminatory reason" for the decision to terminate Plaintiff.  *See id.* (citation omitted).  If

28   Defendants meet their initial burden, then Plaintiff must demonstrate that Defendants' showing is

6

1    "insufficient" or that there is a "triable issue of fact material to [Defendants'] showing." *See id.*

2    Here, Defendants have met their initial burden by showing that Plaintiff cannot establish

3    one of the elements of the FEHA claim:  namely that Plaintiff was able to perform his job (or any

4    job) at the time of his termination.  In June 2018, Dr. Parekh said that Plaintiff was "unable to

5    work in any capacity," that no accommodations would allow him to return to work, and that these

6    restrictions would be permanent unless Plaintiff got "a heart-kidney transplant and then

7    recover[ed] from that surgery." Contrisciano Decl. Ex. B at 187–88.  Defendant granted ADA

8    leave through October 1, 2018 on this basis.  *Id.* ¶ 5.  Then on October 17, 2018, Dr. Parekh's

9    physician's assistant prepared a note "plac[ing] [Plaintiff] off work" from October 1, 2018 through

10   February 1, 2019, which Plaintiff described as "a doctor's note stating that I will be out until Feb

11   2019." *Id.* Ex. D.  Consistent with all of this, in a "medical questionnaire" two days later, Dr.

12   Parekh indicated that he did not expect Plaintiff to return to work, likely with restrictions, until "6

13   months – 1 year after [the] heart transplant," and answered "N/A" to the question "What

14   workplace adjustments can be made to help your patient return to work and consistently perform

15   his/her job?" *Id.* Ex. E at VWR00384.  Accordingly, the record unambiguously shows that

16   Plaintiff was not cleared by his medical providers to return to work at any point before his

17   termination, and that no one could predict when he might be cleared to work (which was

18   understandable, because that clearance was contingent on a transplant operation that had not yet

19   even been scheduled).[2]

20   Plaintiff points to the meeting he had with Mr. Koo in which he says he indicated that he

21   felt he could return to work.  But that meeting occurred two weeks before the October 17 "off

22   work" note and the October 19 questionnaire indicating that Plaintiff could not return until after

23   his as-yet-unscheduled transplant. *See id.*  In light of the unambiguous medical evidence, the

24   Court finds that Plaintiff's statement that he felt he could return to work does not create a triable

25

26   [2] Plaintiff argues that Dr. Parekh's report does not explicitly state that Plaintiff was "unable to work." Opp. at 7.  But the medical provider questionnaire indicated that "a reply of 'no work' or

27   'totally incapacitated' is not sufficient.  Contrisciano Decl. ¶ 6, Ex. E at VWR00384.  In any event, Dr. Parekh's "N/A" response to the "adjustments" question, together with the physician's

28   assistant's note and Plaintiff's own characterization, leave no room for any triable issue of fact as to this question.

United States District Court
Northern District of California

1   issue. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (affirming summary

2   judgment on ADA claim and finding plaintiff's "uncorroborated and self-serving" testimony

3   "contradict[ed] her prior sworn statements and the medical evidence" regarding the extent of

4   plaintiff's disability and ability to work).  The record shows that Plaintiff's medical providers

5   consistently indicated that he was unable to work.  Plaintiff's self-diagnosis to the contrary cannot

6   create a material issue of fact.  And Plaintiff does not point to any evidence that reveals any

7   arguable ambiguity in the October doctor's reports (or prior reports).  *See Swonke v. Sprint Inc.*,

8   327 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004) (holding that finding a genuine dispute where

9   medical notes stated without ambiguity that plaintiff was unable to return to work "would be to

10  engage in a level of fiction unwarranted by controlling legal standards").

11       Plaintiff also argues that the burden shifting approach is unnecessary in light of direct

12  evidence of discriminatory animus.  Opp. at 10.  "Direct evidence is evidence which, if believed,

13  proves the fact [of discriminatory animus] without inference or presumption."  *Godwin v. Hunt*

14  *Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (citation omitted).  Plaintiff points to Mr. Koo's

15  statement in the following email to human resources:

> [H]e told me his restrictions have not changed, he cannot lift or move
> anything.  Once I have a doctor's note of his restriction[s], I can give
> you some better info.  At this point I don't have any work that can fit
> his restrictions, and it[']s already October 5th.  Do we have to wait
> for the employee to give notice or can the company start to take steps
> to part ways with the associate?  I don't want to do this [to] him
> because honestly, he is a great worker but at this point there is no way
> we can have him on the team until we either have a position that []
> satisf[ies] his medical restriction[s] or he gets better and can do the
> work at my site.

21  Erlich Decl., Ex. 10.  Plaintiff contends that this evidence reflects animus because defendants

22  "expected [Plaintiff] to return to work full time and without restrictions."  Opp. at 10.

23  Specifically, Plaintiff points to Mr. Koo's response at deposition when questioned whether it was

24  his "understanding" that Plaintiff "had to be at a hundred percent" to return to work.  *See* Erlich

25  Decl., Ex. 1 ("Koo Dep.") at 91:24-16.  Mr. Koo responded that his understanding was that

26  Plaintiff "had to be cleared for work," and deferred to human resources.  *Id.* at 92:17-22.  Contrary

27  to Plaintiff's contention, even making all reasonable inferences in Plaintiff's favor, Mr. Koo's

28

United States District Court
Northern District of California

1  deposition testimony does not reflect, or suggest, a "100% healed" or "fully healed" policy.  *See*

2  Opp. at 10.  Plaintiff also argues that there is substantial circumstantial evidence of Defendants'

3  animus.  *Id.* at 10–11.  Plaintiff points to the following answer from Mr. Koo's deposition

4  testimony:

> We've been providing temps for way too long, and it's costing us 40
> percent over the markup of that position.  Over time, that -- we're
> going to lose money on this.  And I'm sorry to say – I hate that.  I hate
> to say that, but it's business.  At bottom line, it's business, and I
> needed a body for that.

8  Koo Dep. at 107:18-25.  Plaintiff argues that this financial justification somehow contradicts

9  Defendants' stated basis for terminating Plaintiff.  Opp. at 11.  Defendants respond that it is

10  undisputed that "VWR terminated Plaintiff because he was unable to work, and that he was unable

11  to work because he was medically disabled."  Reply at 7.

12  Because the record reflects that VWR believed it was not feasible to use temporary

13  workers indefinitely due to financial factors and customer relationship issues, the Court does not

14  find VWR's justification inconsistent in any way, or reflective of any animus.  *See* Contrisciano

15  Decl. ¶ 5; Koo Decl. ¶¶ 8, 10.  Plaintiff has not pointed to any evidence that would support an

16  inference that VWR's proffered reason was pretextual or that he was fired for a retaliatory reason.

17  The Court also finds there is no direct or circumstantial evidence of discriminatory animus such

18  that a reasonable jury could conclude that Defendants engaged in intentional discrimination.

19  While it is doubtless a painful experience to be fired (or to have to fire someone), terminating an

20  employee based on his inability to work is not "animus":  it is conduct expressly allowed by

21  FEHA.

22  Because Plaintiff fails to show any triable issue of fact as to whether he was able to

23  perform his job at the time of his termination, or as to the legitimacy of Defendants' proffered

24  nondiscriminatory reasons, the Court **GRANTS** Defendants' motion as to the disability

25  discrimination claim.

26  **ii.  Retaliation**

27  "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1)

28  he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse

United States District Court
Northern District of California

1   employment action, and (3) a causal link existed between the protected activity and the employer's

2   action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005).  When a defendant

3   seeks summary judgment on a plaintiff's retaliation claim under FEHA, California follows the

4   *McDonnell Douglas* burden shifting analysis "to determine whether there are triable issues of fact

5   for resolution by a jury." *Loggins v. Kaiser Permanente Int'l.*, 151 Cal. App. 4th 1102, 1108–09

6   (Ct. App. 2007).  "In evaluating a legitimate nondiscriminatory reason, the ultimate issue is simply

7   whether the employer acted with a motive to discriminate illegally.  Thus, legitimate reasons in

8   this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus

9   preclude a finding of discrimination." *Lawler*, 704 F.3d at 1243 (emphasis omitted) (internal

10  quotations and citation omitted).

11          Plaintiff argues that Defendants fired him after he requested an accommodation in October

12  2018.  Opp. at 21 and n.5.  As to the causal link, Plaintiff contends that the timing of his

13  termination, less than four weeks after meeting with Mr. Koo and two weeks after VWR received

14  the updated doctor's note, raises a triable issue.  *Id.* at 21–22.  Defendants contend that Plaintiff

15  had been on leave for nearly eight months by the time he requested his third leave and that VWR

16  terminated Plaintiff for a legitimate, nondiscriminatory reason.  Mot. at 14; Reply at 7, 14.

17          Even assuming that the evidence here suffices to establish a prima facie case, the Court

18  finds that Defendants have shown that there were legitimate, nonretaliatory reasons for their

19  decision, including that Plaintiff could not perform his duties and that it was not feasible to cover

20  Plaintiff's position with temporary workers indefinitely for financial and customer service reasons.

21  *See* Contrisciano Decl. ¶ 5; Koo Decl. ¶¶ 8, 10; *see also Dep't of Fair Emp. & Hous. v. Lucent*

22  *Techs.*, Inc., 642 F.3d 728, 746 (9th Cir. 2011) (holding that employer provided a legitimate,

23  nondiscriminatory reason for terminating an employee because of employee's "inability to

24  perform the essential functions of" his position and defendant's "inability to reasonably

25  accommodate him").  As previously noted, Plaintiff does not point to any evidence that raises a

26  reasonable inference that he was terminated for any improper motive.  Accordingly, Plaintiff has

27  not provided "substantial responsive evidence" that VWR's reasons were "untrue or pretextual."

28  *See Loggins*, 151 Cal. App. at 1109;

United States District Court
Northern District of California

10

1    *see also Lawler*, 704 F.3d at 1244 ("A plaintiff must offer 'specific' and 'substantial'

2    circumstantial evidence to prove pretext in a retaliation claim under FEHA.") (citation omitted).

3           Because Plaintiff has not raised a triable issue as to whether VWR's stated legitimate

4    reasons were pretextual, the Court **GRANTS** Defendants' motion for summary judgment as to the

5    retaliation claim.

6                   **iii.    Failure to Prevent Discrimination and Retaliation**

7           Section 12940(k) of FEHA prohibits an employer from "fail[ing] to take all reasonable

8    steps necessary to prevent discrimination and harassment from occurring."  This subsection

9    describes a separate unlawful employment practice.  *See Lucent Techs., Inc.*, 642 F.3d at 748

10   (citing *Carter v. California Dep't of Veterans Affs.*, 38 Cal. 4th 914, 925 n.4 (Cal. 2006)).  But

11   "employers are not liable for failing to take necessary steps to prevent discrimination, 'except

12   where the [discriminatory] actions took place and were not prevented.' "  *Id.* (citations omitted).

13   Because the evidence creates no triable issue of fact as to whether VWR discriminated or

14   retaliated against Plaintiff, the Court **GRANTS** Defendants' motion for summary judgment as to

15   the claim of failure to prevent discrimination and retaliation.

16                  **iv.    Failure to Accommodate and Failure to Engage in the Interactive Process**

17          Section 12940(m)(1) of FEHA makes it unlawful for an employer to "fail to make

18   reasonable accommodation for the known physical . . . disability of an . . . employee."  "The

19   essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered

20   by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential

21   functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's

22   disability."  *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766 (Ct. App. 2011).  And

23   section 12940(n) of FEHA makes it unlawful for an employer to "fail to engage in a timely, good

24   faith, interactive process with the employee or applicant to determine effective reasonable

25   accommodations, if any, in response to a request for reasonable accommodation by an employee

26   or applicant with a known physical or mental disability."

27          Defendants argue that Plaintiff was "medically unable to perform his actual job duties, *or*

28   *any work*, at the time of his termination."  Mot. at 10.  VWR granted Plaintiff's previous requests

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    for leaves of absence in March and June.  With respect to any further requests for accommodation,

2    Defendants reiterate that the medical evidence indicated that no accommodation was applicable

3    and that Plaintiff "would remain unable to work indefinitely" in light of his unscheduled heart

4    transplant.  Reply at 9.

5         Courts "cannot impose upon the employer an obligation to engage in a process that was

6    guaranteed to be futile."  *Swonke*, 327 F. Supp. 2d at 1137 (finding that "no accommodations . . .

7    could have possibly been consistent with the medical opinion that [plaintiff] was totally disabled

8    from any employment"); *Markowitz v. United Parcel Serv., Inc.*, No. SACV151367AGDFMX,

9    2016 WL 3598728, at *7 (C.D. Cal. July 1, 2016), *aff'd*, 711 F. App'x 430 (9th Cir. 2018) (same).

10   To the extent Plaintiff argues that VWR could have modified Plaintiff's role or placed him in a

11   different position, the Court finds that Defendants were entitled to rely on the medical evidence

12   indicating he was unable to work.[3]  *See Swonke*, 327 F. Supp. 2d 1128, 1137–38; *see also Tipton*

13   *v. Airport Terminal Servs., Inc.*, No. CV1809503ABJEMX, 2020 WL 3980127, at *7 (C.D. Cal.

14   Mar. 31, 2020) (finding the defendant "was entitled to place [p]laintiff off work entirely in line

15   with the opinion of her physician"); *Shamir v. SCCA Store Holdings, Inc.*, No. CV 13-6672 ABC

16   (ASX), 2014 WL 12597151, at *6 (C.D. Cal. June 9, 2014) ("Defendant was never obligated to

17   engage in the interactive process with Plaintiff to identify the accommodations Plaintiff would

18   need upon her return to work—even though specified in the doctor's notes—because Plaintiff's

19   doctors never authorized her to return to work.").

20        To the extent Plaintiff contends that VWR could have extended Plaintiff's leave, the Court

21   agrees that the requested leave was indefinite because the medical reports discussing, and later

22   extending, potential return dates always framed any return as contingent on recovery from a

23

24   [3] Plaintiff's reliance on *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952 (Ct.
     App. 2008), does not change the Court's conclusion.  In *Nadaf-Rahrov*, to show there was no
25   triable issue of fact as to plaintiff's ability to perform the essential functions of her desired
     position, the defendant pointed to a particular medical note from November 2003 stating that the
26   plaintiff was unable to perform any work.  *Id.* at 964–65.  But the court found there was a triable
     issue in light of the doctor's averments that he "always maintained" that the plaintiff was capable
27   of performing other jobs and a subsequent medical note in January 2004 "recommending [that
     Plaintiff] be reassigned to a position 'that would not involve bending, standing, or kneeling.' " *Id.*
28   at 958, 965–66.  Here, Plaintiff has not pointed to any evidence creating any arguable ambiguity in
     the medical evidence.  The Court thus finds *Nadaf-Rahrov* inapposite.

1    surgery that had yet to be scheduled.  And an employer "is not required to provide an indefinite

2    leave of absence as a reasonable accommodation."  2 Cal. Code Regs. § 11068(c); *see Hanson*, 74

3    Cal. App. 4th at 226–27 ("Reasonable accommodation does not require the employer to wait

4    indefinitely for an employee's medical condition to be corrected." (quoting *Gantt v. Wilson*

5    *Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998))).

6           The Court thus **GRANTS** Defendants' motion for summary judgment as to the claims of

7    failure to accommodate and failure to engage in the interactive process.

8           **B.    CFRA Retaliation Claim**

9           The CFRA is contained within FEHA and allows for certain employees "to take up to a

10   total of 12 workweeks in any 12-month period for family care and medical leave."  Cal. Gov't

11   Code § 12945.2(a); *Rogers v. Cty. of Los Angeles*, 198 Cal. App. 4th 480, 487 (Ct. App. 2011).

12   The CFRA makes it unlawful for an employer "to discharge, fine, suspend, expel, or discriminate

13   against, any individual because of . . . [a]n individual's exercise of the right to family care and

14   medical leave provided by" the CFRA.  Cal. Gov't Code § 12945.2(k).[4]  "Violations of the CFRA

15   generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that

16   an employer denied or interfered with her substantive rights to protected medical leave, and (2)

17   'retaliation' claims in which an employee alleges that []he suffered an adverse employment action

18   for exercising her right to CFRA leave."  *Rogers*, 198 Cal. App. 4th at 487–88.[5]

19

20   [4] Prior to the recent amendment of the CFRA, the retaliation provision was listed as subsection (*l*).
     *See* Cal. Gov't Code § 12945.2(*l*) (version repealed eff. 1/1/21), 12945.2(k) (added Stats. 2020,
21   Ch. 86; eff. 1/1/21).
     [5] Plaintiff contends that a CFRA interference claim should proceed to trial because Defendants did
22   not move to dismiss it or otherwise address it.  Opp. at 22.  Plaintiff clearly brought a CFRA
     "discrimination and retaliation" claim, citing to the section of the statute that makes it unlawful to
23   "discharge . . . or discriminate against, any individual because of . . . an individual's exercise of
     the right to family care and medical leave."  *See* Compl. ¶ 48 (citing Cal. Gov't Code §
24   12945.2(*l*)).  But Plaintiff did not raise a CFRA interference claim in his complaint or include that
     claim in his statement of legal issues in his case management conference statement.  *See* Dkt. No.
25   18 at 3 (listing five FEHA claims, a wrongful termination claim, and a claim for "discrimination
     and retaliation in violation of CFRA"); *see also Bareno v. San Diego Cmty. Coll. Dist.*, 7 Cal.
26   App. 5th 546, 559 n.11 (Ct. App. 2017) (explaining that "[t]he statutory authority for an
     'interference' claim arises from section 12945.2, subdivision (t), which makes it unlawful for an
27   employer 'to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right'
     provided by CFRA," and contrasting this claim to retaliation claims arising under subdivision
28   (*l*)(1)).  The Court rejects Plaintiff's attempt to add a CFRA interference claim for the first time in
     his opposition to Defendants' motion for summary judgment.  *See Echlin v. PeaceHealth*, 887

*United States District Court*
*Northern District of California*

1     To make a prima facie showing of retaliation under the CFRA, a plaintiff must establish

2     that "(1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3)

3     the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an

4     adverse employment action because he or she exercised the right to take CFRA leave." *Rogers*,

5     198 Cal. App. 4th at 491 (emphasis omitted).  Retaliation claims under the CFRA are subject to

6     the *McDonnell Douglas* burden-shifting analysis.  *Moore v. Regents of Univ. of California*, 248

7     Cal. App. 4th 216, 248 (Ct. App. 2016).

8     Plaintiff contends that he took protected leave beginning in March 2018 and that Plaintiff's

9     leave was a "substantial motivating reason for discharging him."  Opp. at 22.  Defendants argue

10    that this count fails because VWR terminated Plaintiff for a legitimate, nondiscriminatory reason.

11    Mot. at 14.  The Court agrees, because as previously noted, Plaintiff fails to meet his burden of

12    showing any triable issue as to whether VWR's proffered legitimate nondiscriminatory reason for

13    terminating him was pretextual.  *See Chavez v. JPMorgan Chase & Co.*, 731 F. App'x 592, 595

14    (9th Cir. 2018) (holding the plaintiff's CFRA retaliation claim "fail[ed] because she cannot show

15    that [defendant's] reason for terminating her was pretextual").[6]  Accordingly, the Court **GRANTS**

16    Defendants' motion for summary judgment as to the retaliation claim.[7]

17    //

18    //

19    //

20    //

21    //

22

23    F.3d 967, 978 (9th Cir. 2018); *see also Burrell v. Cty. of Santa Clara*, No. 11-CV-04569-LHK, 2013 WL 2156374, at *11 (N.D. Cal. May 17, 2013) (citations omitted) (holding that the court

24    would "not consider claims raised for the first time at summary judgment which Plaintiffs did not raise in their pleadings").

25    [6] As an unpublished Ninth Circuit decision, *Chavez* is not precedent, but can be considered for its persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

26    [7] With no surviving claim, the Court finds that any question regarding the punitive damages claim is moot.  And because Plaintiff's claim for wrongful termination is derivative of both his FEHA

27    and CFRA claims, it fails for the same reasons the Court found those claims deficient. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to the wrongful

28    termination claim.

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

The Court **GRANTS** Defendants' motion for summary judgment.  The Clerk is directed to enter judgment in favor of Defendants and close the file.


**IT IS SO ORDERED.**


Dated: 5/13/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge